UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Tanya Murphy, OBO A.R., a minor, ) | Civil Action No. 4:19-cv-03471-RBH |
| Plaintiff, ) | |
| v. ) | **ORDER** |
| Kilolo Kijakazi,[1] Acting Commissioner ) of the Social Security Administration, ) | |
| Defendant. ) | |

This matter is before the Court following the issuance of a Report and Recommendation ("R & R") by United States Magistrate Judge Thomas E. Rogers, III.[2] Plaintiff, Tanya Murphy, proceeding pro se,[3] brought this action pursuant to 42 U.S.C. Section 405(g) to obtain judicial review of a final decision of the Commission of Social Security ("the Commissioner") denying Plaintiff's minor son's ("Child") claim for supplemental security income ("SSI"). The Magistrate Judge recommends affirming the Commissioner's decision denying Plaintiff's claim for benefits.

### FACTUAL FINDINGS AND PROCEDURAL HISTORY

Child filed an application for SSI on July 25, 2017, alleging disability with an onset date of

---

[1] Recently, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Kijakazi is substituted for Andrew M. Saul.

[2] This matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina.

[3] The Court is mindful of its duty to liberally construe pro se filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (recognizing "[a] document filed pro se is to be liberally construed" (internal quotation marks omitted)). *But see United States v. Wilson*, 699 F.3d 789, 797 (4 Cir. 2012) ("Although courts must liberally construe the claims of pro se litigants, the special judicial solicitude with which a district court should view pro se filings does not transform the court into an advocate." (internal citations, quotation marks, ellipsis, and brackets omitted)).

May 1, 2016. Child is now 19 years old, but was 15 years old on the date the application was filed.[4]
The application was denied initially and upon reconsideration. Child then requested a hearing before an administrative law judge ("ALJ"). A hearing was held on April 1, 2019, at which time Child and Plaintiff, unrepresented, appeared and testified. The ALJ issued a decision on June 17, 2019, finding that Child was not disabled. [ALJ Decision, ECF No. 25-2 at 14-27]. The ALJ's findings are as follows:

1.  The claimant was born on August 27, 2001. Therefore, he was an adolescent on June 19, 2017, the date application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).

2.  The claimant has not engaged in substantial gainful activity since June 19, 2017, the application date (20 CFR 416.924(b) and 416.971 et seq.).

3.  The claimant has the following severe impairments: adjustment disorder with depressed mood, post-traumatic stress disorder (PTSD), status post left humerus fracture (20 CFR 416. 924(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5.  The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6.  The claimant has not been disabled, as defined in the Social Security Act, since June 19, 2017, the date the application was filed (20 CFR 416.924(a)).

[ECF No. 25-2, at 17-27].

The ALJ's findings became the final decision of the Commission when the Appeals Council

---

[4] Child was born on August 27, 2001. [Application for SSI, ECF No. 25-5 at 2].

denied Child's request for further review on October 17, 2019. Plaintiff, proceeding pro se, filed this action on December 13, 2019, seeking judicial review of the Commissioner's Decision on behalf of Child. [ECF No. 1]. Both Plaintiff and the Commissioner filed briefs. [ECF Nos. 32 & 33]. The Magistrate Judge issued his R & R on April 26, 2021, recommending that the Commissioner's decision be affirmed. [ECF No. 36]. Plaintiff timely filed objections to the R & R on May 10, 2021. [ECF Nos. 38 & 38-3]. The Commissioner filed a response to Plaintiff's objections on May 10, 2021. [ECF No. 39].

## STANDARD OF REVIEW

### I. Judicial Review of the Commissioner's Findings

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even

3

if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

**II. The Court's Review of the Magistrate Judge's Report and Recommendation**

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the R & R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

**APPLICABLE LAW**

A child is considered disabled under the Social Security Act if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations which are expected to either cause death or last continuously for at least twelve months. 42 U.S.C. § 1382(c)(3)(C)(I); *see also* 20 C.F.R. § 416.906. The regulations set forth a sequential three step process for analyzing disability applications for children. 20 C.F.R. § 416.924. Those steps are as follows: (1) is the child engaged in "any substantial gainful activity?" If so, benefits should be denied. (2) Does the child have an impairment or combination of impairments that are severe? If the child does not have a severe impairment, benefits should be denied. (3) Does the child's impairment(s) meet, medically equal or are functionally equivalent to the Listing of Impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1? If the minor claimant has such an impairment, then SSI benefits should be granted.

In determining whether an impairment or combination of impairments functionally equals the listings, the Commissioner must assess a claimant's functioning in six different "domains" to determine what a child can and cannot do. 20 C.F.R. § 416.924a; 416.926a(b)(1). These domains include: (1) the ability to acquire and use information; (2) attend and complete tasks; (3) interact and relate to others; (4) move about and manipulate objects; (5) care for oneself; and (6) their health and physical well-being. 20 C.F.R. §§ 416.924(a); 416.924(b), 416.926a(b)(1). For a child's impairment(s) to functionally equal the listings, they must result in either "marked" limitations in two domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). In assessing whether a claimant has a "marked" or "extreme" limitation, one must consider the functional limitations from all medically determinable impairments, including those impairments that are not severe. 20 C.F.R. § 416.926(a)(c).

5

A child has a "marked" limitation when his impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). Further, the Regulations state that a "marked" limitation is "more than moderate" but "less than extreme." A child has an "extreme" limitation in a domain when his impairment(s) interferes "very seriously" with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3).

**ANALYSIS**

The Magistrate Judge recommends affirming the final decision of the Commissioner, concluding "[s]ubstantial evidence supports the ALJ's finding that [Child] does not have an impairment or combination of impairments that result in either 'marked' in two domains or 'extreme' in one domain."[5] *See* ECF No. 36 at 11. Plaintiff does not specifically object to any of the ALJ's findings related to the six domains, but liberally construing Plaintiff's objections, Plaintiff appears to argue that the evidence presented points to Child's clear disability such that substantial evidence would not support a finding of no disability. *See* ECF Nos. 38 & 38-3. Plaintiff's objections note Child was laughed at by classmates, his grades dropped, he was suspended and could only return to a school for troubled kids, his arm was broken and healed with a disability, he wakes up in pain some nights, he is too embarrassed to tell his mother about his pain, and he suffers from major depression, mood disorder, PTSD, and anxiety. *See* ECF No. 38. Plaintiff argues that

---

[5] The Magistrate Judge recommends finding Plaintiff's allegation that the ALJ or Commissioner showed conflict of interest or bias is without merit. *See* ECF No. 36 at 11. Plaintiff does not object to that recommendation, and having found no clear error, the Court adopts that finding. *See Diamond* & *Camby*, *supra* (recognizing a district court can adopt an unobjected-to recommendation without explanation where there is no clear error).

6

Child's claim being denied "WILL BE LAUGHABLE!"[6]

The ALJ found Child's adjustment disorder with depressed mood, PTSD, and status post left humerus fracture were severe. *See* ECF No. 25-2 at 17. The ALJ then adequately detailed Child's medical, mental health, and school records and cited to testimony by Plaintiff[7] and Child and to State agency assessments. *See* ECF No. 25-2 at 18–21. The ALJ cited and applied those facts to the six domains and determined Child has no limitation in acquiring and using information or in health and physical well-being and less than marked limitation in attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and ability to care for himself. *See* ECF No. 25-2 at 21–27. Thus, the ALJ ultimately found Child is not disabled. *See* ECF No. 25-2 at 27. Substantial evidence supports the ALJ's findings.

In April 2016, Child was involved in a fight at school and a security guard intervened and caused Child to suffer from a left humerus fracture. *See* ECF Nos. 25-7 at 2 & 25-8 at 56. Child saw Dr. Frederick Piehl, at Midlands Orthopaedics and Neurosurgery, multiple times following the fracture, and in September 2016, Dr. Piehl, indicated Child was doing well and had full range of motion of the left elbow and a nontender humerus. *See* ECF No. 25-7 at 7–14. Dr. Piehl released Child to full activities. *See id.* at 8.

In October 2017, medical records from Dr. DuPuy, with OrthoCarolina, indicated Child

---

[6] In the attachments to Plaintiff's objections, Plaintiff also argues Child's "disability has deteriorated since the appeal." *See* ECF No. 38-3. However, the Court is "restricted to the administrative record in performing [its] limited function of determining whether the Secretary's decision is supported by substantial evidence." *Huckabee v. Richardson*, 468 F.2d 1380, 1381 (4th Cir. 1972). Thus, because the observations in Plaintiff's attachments to the objections are specifically noted to be have occurred after the appeal to this Court was filed, those observations are not part of the administrative record.

[7] The ALJ specifically noted Plaintiff stated that children laugh at Child when he plays basketball and he does not always tell her when he is in pain. *See* ECF No. 25-2 at 18.

7

reported pain described as three or four out of ten and noted Child was tight in his shoulder and lacked ten degrees of full extension of the left elbow. *See* ECF No. 25-7 at 144. However, Dr. DuPuy opined Child just needed stretching and strengthening through physical therapy. *See id.* at 144–145.

In February 2018, Child reported occasional pain that lasted from a few minutes to hours and occurred randomly from once a week to once a month. *See* ECF No. 25-8 at 44. At that time, Dr. Inbrahim Biknalsheikh, a pediatric neurologist, found Child had normal motor, reflex, and sensory exams and no clinical weaknesses, and he opined Child would not need further neurological workup. *See* ECF No. 25-8 at 44–45.

Dr. David S. Brown, an orthopaedic surgeon, saw Child in March and May of 2018 and noted Child presented with mild and nonspecific complaints about his left arm. *See* ECF No. 25-8 at 109, 114. Dr. Brown observed that Child has a healed fracture with mild humeral malunion that is not really noticeable and full nonrestricted motion at the shoulder and elbow. *See id.* at 109, 111–112. Dr. Brown opined that he would not recommend corrective surgery and that Child could return to unrestricted use of his left arm even for sporting activities. *See* ECF No. 25-8 at 109, 112.

At the hearing before the ALJ, Child testified he has some pain in his arm when he lifts things or if he lays in the same spot for a long time, but he does not have any pain when he does things around the house. *See* ECF No. 25-2 at 56-57. He also testified he takes over-the-counter pain medications to relieve his pain sixteen to seventeen days out of the month. *See* ECF No. 25-2 at 58.

Child's mental health records indicate he has been treated by Dr. David Tatum, a psychiatrist, since early 2017. *See* ECF No. 25-7 at 89. Dr. Tatum's records indicate that Prozac

has been helpful for Child's adjustment disorder and PTSD. *See* ECF No. 25-8 at 99. Child only used propranolol for anxiety once, and that was in anticipation of a deposition in his lawsuit against his former school, which stemmed from the incident with the security guard. *See* ECF No. 25-8 at 99. That lawsuit was also noted to be the cause of tension and conflict between Child and Plaintiff because Child did not want to be involved in the lawsuit or discuss the incident. *See* ECF No. 25-8 at 54, 99. Dr. Tatum consistently noted Child was not in acute distress, had appropriate hygiene, and had average intelligence and intact recent and remote memory. *See* ECF Nos. 25-7 at 91–92, 122, 134 & 25-8 at 5–6, 86, 102. Although at times Dr. Tatum reported instances of poor concentration, insight, and judgment, Dr. Tatum also noted instances of fair concentration, insight, and judgment. *See id.* Based on Child's appearance before the ALJ, the ALJ agreed with Dr. Tatum's opinion that Child is not very forthcoming, but very polite. *See id.*; ECF No. 25-2 at 24.

Plaintiff expressed concerns with Child's apathy and noted that she has to remind Child to do his chores and to complete information he needs to apply for college. *See* ECF No. 25-2 at 63–65. Child testified that for fun he likes to play PlayStation games and sleep and that he keeps his room clean and does his own laundry. *See* ECF No. 25-2 at 43, 45–46. Child stated that he plans to participate in his high school graduation ceremony, and he wants to attend technical college to become an x-ray technician. *See* ECF No. 25-2 at 43, 45–46, 60.

Plaintiff moved Child to home schooling after the incident with the security guard. *See* ECF No. 25-7 at 122. Child was an A and B student before he began home schooling, but he received D's and F's in home school. *See* ECF No. 25-8 at 56. However, Dr. Tatum opined that Child deliberately failed home schooling because he did not want to be home schooled. *See* ECF No. 25-8 at 103. Dr. Tatum also reported that Child's grades and mood improved when he returned

to regular school.[8]  *See* ECF No. 25-8 at 103.  A letter from Plaintiff's high school dated January 11, 2018, stated Child failed English 3, but other records indicate he quickly recovered that credit.  *See* ECF Nos. 25-8 at 42, 89.  In the third quarter of the 2017–2018 school year, Child's grades were low, but passing with two D's and a C.  *See* ECF No. 25-8 at 89.  At the hearing before the ALJ on April 19, 2019, Child stated he made two B's in the first semester of the 2018–2019 school that year and he made three B's and an F in his classes the first nine weeks of the second semester.  *See* ECF No. 25-2 at 42–43.  Plaintiff testified that Child usually does really well in school and she was surprised to hear about the D's and the F.  *See* ECF No. 25-2. at 50–51.

In March 2018, a team from Child's school noted they did not move forward with an educational evaluation because they did not suspect Child was a student with disability.  *See* ECF No. 25-8 at 88.  The team indicated that Child's teachers described him "as a bright student who is more than capable of making good grades."  *See* ECF No. 25-8 at 88.  The team also indicated Child's grades were lower than what he was capable of achieving, and they agreed Child would benefit from classroom accommodation.  *See* ECF No. 25-8 at 88.  In May 2018, Child was put under a 504 accommodation plan that would allow for preferential seating, the ability to complete work in a separate area if he was unable to focus, and the ability to go to the guidance counselor if he needed to cool down.  *See* ECF No. 25-8 at 119.  In the spring semester of 2018, Child was involved in a verbal altercation with another student in class, but the teacher was able to de-escalate the situation.  *See* ECF No. 25-8 at 108.  In that same semester, Child received one day of out of school suspension for using profanity on the bus lot.  ECF No. 25-8 at 107.  On January 16, 2019, Child skipped class after his teacher asked him to sit in a different area of the classroom or go to

---

[8] Plaintiff transferred to South Point High School in October 2017.  *See* ECF No. 25-8 at 88.

administration. *See* ECF No. 25-8 at 122. Dr. Tatum signed a medical homebound instruction form on February 12, 2019, which indicated Child was prevented from attending school from January 24, 2019 until February 13, 2019 due to PTSD and adjustment disorder that caused poor cognition and school/social anxiety. *See* ECF No. 25-8 at 117. Dr. Tatum listed therapy and medication management as Child's treatment during that time. *See id*. However, there is nothing else in the record about this instance and it was not discussed at the hearing before the ALJ. Furthermore, besides these instances there is no other evidence of behavioral issues.

The ALJ set forth the applicable laws and regulations relating to each of the six domains and cited and discussed testimony, medical records, and school records to support his findings. *See* ECF No. 25-2 at 21–27. The ALJ found Child has no limitation in acquiring and using information or in health and physical well-being and less than marked limitation in attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and ability to care for himself. *See* ECF No. 25-2 at 21–27. Those findings were also consistent with the state agency assessments.[9] *See* ECF No. 25-3 at 11–19, 22–35, 39–56. The evidence set forth by the ALJ, along with any additional evidence of record cited above, substantially supports the ALJ's findings that Plaintiff does not have an impairment or combination of impairments that result in either "marked" in two domains or "extreme" in one domain and the ALJ's ultimate finding of no disability.[10] Thus,

---

[9] The state agency assessments were dated November 14, 2017, February 5, 2018, and May 8, 2018. *See* ECF No. 25-3 at 35, 56. The November 2017 and February 2018 state agency assessments found no limitations in caring for self while the May 2018 state agency assessment and the ALJ found less than marked limitations in that domain. *See* ECF No. 25-2 at 26 25-3 at

[10] Plaintiff's objections also states that the Commissioner and various judges are corrupt and involved in a conspiracy with friends and family members. *See* ECF No. 38. These statements are not specific objections to the Magistrate Judge's R & R and are not supported by the trial transcript or any other evidence of record. Furthermore, Plaintiff's objections include the civil case number for Child's personal injury suit in state court, were also filed in that case, and appear to refer to Child's attorney in that case, although he is not involved in this case. *See* Chester County Sixth Judicial Circuit Public Index

the Commissioner's decision is supported by substantial evidence and must be affirmed.

## CONCLUSION

The Court has thoroughly reviewed the entire record as a whole, the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, Defendant's reply to the objections, and applicable law. For the foregoing reasons, the Court respectfully overrules Plaintiff's objections and adopts and incorporates herein the Magistrate Judge's R & R as indicated above. The Commissioner's decision is hereby **AFFIRMED**.

**IT IS SO ORDERED**.

July 14, 2021  
Florence, South Carolina

s/ R. Bryan Harwell  
R. Bryan Harwell  
Chief United States District Judge

---

(https://publicindex.sccourts.org/Chester/PublicIndex/PISearch.aspx[Case No. 2017CP120079]). *See United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) (explaining courts "routinely take judicial notice of information contained on state and federal government websites")